# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RACHEL GENEVA ERNEST, | : | NO. 4:24-CV-00669 |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (CAMONI, M.J.) |
| FRANK BISIGNANO,[1] | : | |
| *Commissioner of Social Security*, | : | |
| Defendant. | : | |

## MEMORANDUM OPINION

This is an action brought under 42 U.S.C. § 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Rachel Ernest's claim for disability and supplemental security income benefits under Title II and XVI of the Social Security Act. The Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference). For the reasons stated herein, the Court will affirm the decision of the Commissioner.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action is needed to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    BACKGROUND

### A.    Procedural History

On March 29, 2021, Ernest applied for disability and supplemental security income benefits under Title II and XVI of the Social Security Act, alleging disability as of March 29, 2020. Transcript, doc. 11-3 at 15, 17. Following an initial denial, Ernest submitted an appeal, requesting a hearing before an Administrative Law Judge (ALJ). Doc. 11-4 at 25. The ALJ conducted the hearing and determined that Ernest is not disabled. Doc. 11-2 at 28, 44.

Ernest filed a request for review of the ALJ's decision, which the Appeals Council denied. *Id.* at 2. The ALJ's decision, therefore, became the final decision of the Commissioner. 42 U.S.C. § 405(g). Pending before this Court is Ernest's action seeking judicial review of the Commissioner's decision. Complaint, doc. 1. This case is fully briefed (docs. 14, 16, 19) and ripe for resolution. The parties consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, including entry of final judgment. Consent Form, doc. 9.

## B.    The Disability Determination Process

To receive disability benefits under the Social Security Act ("Act"), a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable . . . impairment which can . . . result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Under the Act, a claimant is disabled "only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." § 423(d)(2)(A). An impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." § 423(d)(3).

Social Security regulations provide a "five-step sequential evaluation process" to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of persuasion through step four, while at step five, the burden shifts to the Secretary to show that the claimant can perform substantial gainful

employment other than the claimant's past relevant work. *Williams v. Sullivan*, 970 F.2d 1178, 1181 (3d Cir. 1992), citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

At the first step, the claimant must establish that he has not engaged in substantial gainful activity since the onset of the alleged disability. *See* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At the second step, claimant must establish that he suffers from a "severe medically determinable . . . impairment that meets the duration requirement . . . ('impairment . . . must have lasted or must be expected to last for a continuous period of at least 12 months')." §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At the third step, the claimant must provide evidence that his impairment "meets or equals one of our listings in appendix 1." §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant demonstrates his impairments meet those listings, he is considered to be disabled. *See id.*; §§ 404.1520(d), 416.920(d). If he cannot establish severity of impairment at the third step, the eligibility analysis proceeds to step four in which the ALJ determines whether the claimant's residual functional capacity ("RFC") allows the claimant to continue his previous employment. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). RFC "is

the most [a claimant] can still do despite" impairments. §§ 404.1545(a)(1), 416.945(a)(1). To prevail on step four, claimant's "impairment(s) must prevent [him] from doing . . . past relevant work." §§ 404.1520(f), 416.920(f). At the fifth step, the Commissioner bears the burden to demonstrate that the claimant's RFC and his "age, education, and work experience . . . [allows] adjustment to other work." §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the Commissioner cannot satisfy this burden, the claimant's claim is granted. *See* §§ 404.1520(g), 416.920(g).

### C.   The ALJ's Decision

Here, the ALJ determined that Ernest "has not been under a disability, . . . from March 29, 2020, through the date of this decision." Doc. 11-2 at 28. The ALJ reached this conclusion after proceeding through the five-step sequential analysis required by the Social Security Act. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v); *see* Doc. 11-2 at 13-28.

At step one, the ALJ determined that Ernest "has not engaged in substantial gainful activity since March 29, 2020, the alleged onset date." Doc. 11-2 at 14. At step two, the ALJ found that Ernest has the following severe impairments: degenerative joint disease; obesity; Graves' disease;

hypertension; asthma; bipolar I disorder; generalized anxiety disorder and depressive disorder. *Id.* At step three, the ALJ determined that Ernest "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in" 20 C.F.R. part 404, subpart P, appendix 1. *Id.*

Between steps three and four, the ALJ found that Ernest has the following RFC:

> [T]o perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), with the following additional limitations: the claimant could never climb ladders, ropes or scaffolds, could frequently climb ramps or stairs, could occasionally balance and could frequently crouch, kneel and crawl; could have only occasional exposure to weather (meaning outside atmospheric conditions), non-weather-related extreme cold and hot temperature, wetness, humidity and pulmonary irritants (such as fumes, odors, dust and gases); could have no exposure to poorly ventilated areas, dangerous machinery with moving, mechanical parts and unprotected heights; the claimant would be limited to simple and repetitive tasks with only occasional, simple decision making required and only occasional routine changes in the work environment; and this person could have only occasional contact with the public, coworkers and supervisors.

*Id.* at 18.

At step four, the ALJ determined that Ernest "is unable to perform any past relevant work." *Id.* at 26. At step five, the ALJ determined that considering Ernest's "age, education, work experience, and residual

functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform." *Id.* at 27.

### D.    Issues on Appeal

Ernest raises two issues on appeal: (1) the ALJ's failure to properly address morbid obesity in determining the RFC; and (2) the ALJ's failure to consider Ernest's need to use a cane. *See* Pl.'s Br., doc. 14 at 14, 17. The Court, adhering to the deferential standard of review outlined below, will affirm the decision of the Commissioner.

## II.    <u>LEGAL STANDARD</u>

In reviewing the Commissioner's final decision denying a claimant's application for benefits, the Court is limited to determining whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 1383(c)(3) (incorporating 42 U.S.C. § 405(g) by reference); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Under the substantial-evidence standard, a court examines an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). Substantial evidence does not mean a

large or considerable amount of evidence, but rather "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 103; *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, however, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). In reviewing the record for substantial evidence, "[n]either the district court nor [the Third Circuit] is empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182. To reverse the

ALJ's findings and decision, the Court "must find that the evidence not only supports [a contrary] conclusion but compels it." *Immigr. & Naturalization Serv. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

The question before the Court, therefore, is not whether Ernest is disabled, but whether the Commissioner's finding that Ernest is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 12-2417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues decided by the Commissioner."). In determining that question, the Court must evaluate whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for

his decision beyond stating bare conclusions. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000).

## III.   <u>DISCUSSION</u>

Ernest argues that substantial evidence does not support the ALJ's decision because the ALJ failed to properly consider obesity and the need to use a cane in crafting the RFC. *See* doc. 14 at 14, 17. The Court addresses each argument in turn.

### A.   **Substantial evidence supports the ALJ's assessment of Ernest's obesity.**

Ernest contends that the ALJ failed to properly address morbid obesity in determining the RFC. Pl.'s Reply Br., doc. 19 at 1. Specifically, Ernest asserts that the "ALJ did not adequately explain how he considered Ms. Ernest's obesity in combination with her back and knee impairment." *Id.* at 2.

Under the Social Security regulations, obesity, "when established by objective medical evidence . . . from an acceptable medical source . . . is a [medically determinable impairment]." SSR 19-2p, 2019 WL 2161798, at *22924 (2019). The Court of Appeals for the Third Circuit has required an ALJ to explain the reasoning and provide discussion of a claimant's obesity when it is determined as an impairment. *Diaz v.*

*Comm'r of Soc. Sec.*, 577 F.3d 500, 504–05 (3d Cir. 2009) (The "ALJ, having recognized obesity as an impairment, should determine in the first instance whether, and to what extent, [claimant's] obesity, in combination with her [other impairments] impacted her workplace performance.").

The ALJ's burden of articulation on this issue is not high. *See id.* at 504 (emphasis added) ("Were there *any discussion* of the combined effect of [obesity], we might agree with the District Court."). "The ALJ's failure to explicitly delineate where obesity may have caused or contributed to specific symptoms and functional limitations does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations." *McKean v. Colvin*, 150 F. Supp. 3d 406, 417 (M.D. Pa. 2015). Such is the case here.

The ALJ provided a detailed discussion of Ernest's obesity in crafting the RFC, which meets the burden of articulation. *See* doc. 11-2 at 20; *Diaz*, 577 F.3d at 504. Notably, the ALJ found that Ernest "was noted to be not particularly bothered by her morbid obesity and was not motivated to address the issue." Doc. 11-2 at 20, citing doc. 11-3 at 26. The ALJ explained that her primary care physician recommended

Page 11 of 17

medical weight management and weight loss, which Ernest did not follow. *See id.* ("Her physical exercise goal was to walk five minutes per day, but she was not doing so.").

Even if the ALJ did not delineate where obesity may have caused or contributed to Ernest's specific symptoms, the ALJ properly addressed Ernest's back and right knee limitations. *McKean*, 150 F. Supp. 3d at 417. As to the back pain, the ALJ noted that Ernest "had no extremity pain." Doc. 11-2 at 20. And the ALJ fully accounted for the right knee pain by granting Ernest a limitation to less-than-light work. *Id.* at 18 (reflecting additional limitations).

Ernest argues at length about the medical records that show she suffers from knee and back pain. Doc. 19 at 3. But the ALJ never disputed Ernest's pain symptoms. *See* doc. 11-2 at 23 ("The claimant did have severe problems with her right knee."). Instead, the ALJ fully accounted for the medically determinable impairments and crafted an RFC that reflects the substantial limitations that result from those impairments. *See id.* at 18. The Court may not disturb the ALJ's factual determinations, which are supported by substantial evidence, based on

"the possibility of drawing two inconsistent conclusions from the evidence." *Consolo*, 383 U.S. at 620.

Ernest's remaining arguments boil down to a generalized or speculative assertion that the ALJ failed to analyze obesity to the extent that it might exacerbate her other impairments. *See* doc. 14 at 12 ("how Ms. Ernest's morbid obesity interacted with her other impairments and limitations"); doc. 19 at 5 ("the ALJ erred in failing to properly consider the combined impact of Ms. Ernest's obesity and his other impairments[.]"). Under Third Circuit precedent, however, such speculation is insufficient to warrant remand. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (emphasizing claimant's failure to specify how obesity would affect the five-step analysis to deny a request for remand); see *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 765 (3d Cir. 2016) (rejecting failure to consider cumulative effects of obesity argument where the claimant "never points to specific medical evidence in the record to demonstrate that his obesity . . . is sufficiently disabling."). Because the ALJ provided sufficient consideration and discussion of obesity in crafting the RFC, the ALJ's decision was supported by substantial evidence.

### B.   Substantial evidence supports the ALJ's consideration of Ernest's need for assistive devices.

Ernest next argues that the ALJ failed to consider her need for a cane and that this error is not harmless because, had the ALJ addressed this limitation to the vocational expert, the VE may have opined that Ernest could not perform the identified light jobs. *See* doc. 14 at 18-21. This argument is problematic.

For one, Ernest did not provide medical evidence to suggest her need for use of a cane. *See* doc. 11-2 at 23 (discussing no medical records in the "copious records" submitted by the claimant discussing any prescription for a cane or a walker). "[An] ALJ need not account for use of a hand-held assistive device in an RFC assessment unless that device is medically required." *Mundo v. Kijakazi*, No. 21-517, 2023 U.S. Dist. LEXIS 51006, at \*10 (M.D. Pa. Mar. 24, 2023). The social security regulations require medical documentation to find that a hand-held assistive device is medically required. SSR 96-9P, 1996 WL 374185, at \*7 (1996) ("there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time,

periodically, or only in certain situations; distance and terrain; and any other relevant information).”).

Failing to point the Court to a prescription or any other record evidence of medical need, Ernest clings to her testimony at the oral hearing. Doc. 19 at 6 (“At the hearing, Ms. Ernest testified . . .[s]he was prescribed a cane . . .. Despite this evidence, the ALJ neglected to mention the limitation of cane use while formulating the RFC or in hypothetical questions posed to the vocational expert.”). Doc. 19 at 6. But her testimony is not enough.

A claimant’s own testimony claiming that a cane has been prescribed is insufficient to establish that a cane is medically required. *See Mundo*, 2023 U.S. Dist. LEXIS 51006, at *11. Even a prescription must be tailored to the need of a claimant and explain the assistive device’s medical necessity in sufficient detail. *See Howze v. Barnhart*, 53 F. App’x 218, 222 (3d Cir. 2002) (noting that a prescription for an assistive device with “no discussion of its medical necessity” is “insufficient to support a finding that his cane was medically necessary.”). Although Ernest insists that she “was prescribed a cane”

(doc. 19 at 6), she fails to identify any prescription in the record, let alone one that discusses medical necessity.

Importantly, Ernest's argument is particularly unpersuasive because, contrary to her assertions, the ALJ fully considered her claimed need for a cane both during the oral hearing, in the form of a hypothetical question to the vocational expert, and in her final decision. *See* doc. 11-2 at 59 ("And if this person was additionally limited to jobs that can be performed while using a *handheld assistive device . . . .*); *id.* at 23 ("During the hearing, the claimant alleged that she uses ambulatory assistive devices. However, there is nothing in the medical evidence to support her statement."). "So the argument also fails because the claimed error did not affect the outcome of the analysis in any way." *Rutherford*, 399 F.3d at 556.

Ernest's argument that the ALJ failed to address this limitation to the vocational expert misstates the record. *See* doc. 14 at 18-21; *see also* doc. 19 at 6 ("Despite this evidence, the ALJ neglected to mention the limitation of cane use while formulating the RFC or in hypothetical questions posed to the vocational expert."); *but see* doc. 11-2 at 59. That statement is not true; the ALJ did exactly what Ernest claims she failed

to do. It appears that Ernest was represented at that hearing by an attorney from the same firm litigating this appeal. Counsel is advised to exercise greater care in representing record facts to this Court in the future.

## IV.   <u>CONCLUSION</u>

Accordingly, the Commissioner's decision will be **AFFIRMED**.

An appropriate order follows.

Date: March 30, 2026                    s/*Sean A. Camoni*
                                        Sean A. Camoni
                                        United States Magistrate Judge